(Division B.  March 4, 1929.)

[120 So. 829.  No. 27602.]

---

*Corpus Juris-Cyc. References:  Motor Vehicles, 42CJ, section 910, p. 1138, n. 72.

*I. L. Sheffield* and *Bolton & Monoghan,* for appellant.

*Blair & Anderson,* for appellee.

ETHRIDGE, P. J. Appellant was plaintiff in the court below and brought suit against the appellee for personal injuries occasioned by a collision between an automobile driven by the defendant and a wagon drawn by mules in which the plaintiff was riding as a guest and being driven by a man named Will Nanney.

It appears from the record that Will Nanney, his wife, appellant, and some others were on their way to Friendship Church in Itawamba county at the time the injury occurred. Nanney had stopped his team for another automobile to pass, and after it passed drove into an improved state highway, and testified, as did the plaintiff, that the defendant came down the highway at a rapid rate of speed. There was a curve a short distance from the highway crossing, where the plaintiff was crossing, and Nanney, driver of the wagon, testified that he looked before crossing and saw no car approaching, and that after he drove onto the highway, the defendant came down at a rapid rate of speed, and just as he approached the wagon he attempted to stop the automobile, and that the fender of the automobile struck the front wheel of the wagon, frightening the mules he was driving, and that Mrs. Franks was thrown out upon the improved highway and injured, her arm being bruised and lacerated by the fall. It was further testified for the plaintiff that after the accident the defendant stated that he was to

blame and would pay damages for it. The wagon wheel did not appear to be damaged, and in turning to prevent a collision the automobile was run into a ditch or bank on the side of the road and was partially wrecked. The injury occurred at night. The defendant testified that he was approaching the crossing and was running at about fifteen or twenty miles per hour; that his car was under control and in good shape, and that the wagon in which the plaintiff was riding came into the road ahead of him when he was but a short distance from the crossing; that his lights were burning, and that he turned his car to avoid a collision and wrecked it.

The plaintiff testified that she was thrown from the wagon, that she was sitting in the rear of the wagon, and that when the mules lunged she was thrown upon the highway and her arm was badly injured; that she consulted a doctor that night, who dressed her wounds; and that she suffered a great deal of pain. The driver of the wagon testified that she was thrown out.

The defendant obtained an instruction from the court reading as follows: ''The court charges the jury that if you believe from the evidence that the plaintiff jumped out of the wagon, or unless the plaintiff shows by a preponderance of the evidence that she did not jump out of the wagon, you will return a verdict for the defendant.''

We think the giving of this instruction was error, and it is the only reversible error in the case. In the first place, we do not think the evidence warrants the giving of an instruction that the plaintiff jumped from the wagon, because there was no evidence that would warrant such; and in the second place, if it be a fact that the plaintiff did jump from the wagon, it would not of itself be negligence. But, even if the plaintiff was negligent, if the defendant was also negligent, the plaintiff would be entitled to a recovery subject to such diminution of the amount of damages as her negligence bore to that of the defendant.

Taking the evidence for the plaintiff as true, and for the purpose of this instruction we will treat it as such, it appears that the defendant was approaching the wagon at a high rate of speed, and that if the car was not deflected from its course there would be a direct collision with the wagon, and it might be a prudent thing to do to jump. Therefore, a person, under such circumstances, might decide to jump in order to avoid a more serious injury by collision. In the case before us, had the car not been turned there would have been a direct collision, and it might have been of such force as to cause the plaintiff to anticipate a serious injury. For the giving of this instruction the judgment must be reversed and the cause remanded.

*Reversed and remanded.*